UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LAKAIYA HARRIS,

    Plaintiff,

v.

PERFECTING CHURCH d/b/a Perfecting Church Corporation and MARVIN L. WINANS,

    Defendants.

                                       /

Case No.:

Hon.

Magistrate Judge

Steven John Moser
MOSER LAW FIRM, P.C.
3 School Street
Suite 207B
Glen Cove, New York  11542
Phone: (516) 671-1150
Fax: (516) 882-5420
smoser@moseremploymentlaw.com
                                       /

**COMPLAINT AND JURY DEMAND**

Plaintiff Lakaiya Harris ("Ms. Harris") by her attorney, THE MOSER LAW FIRM, P.C., for her Complaint against Defendants Perfecting Church ("Perfecting" or "Employer") and Marvin L. Winans ("Winans"), hereby alleges as follows:

**INTRODUCTORY STATEMENT**

1. This is a civil action seeking relief under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., the Michigan Workforce Opportunity Act

1

("WOWA"), Mich. Comp. Laws § 408.411 et seq., and the Michigan Elliott Larsen Civil Rights Act ("ELCRA"), Mich. Comp. Laws § 37.2101 et seq.

## JURISDICTION AND VENUE

2. This court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367, since such claims are so related in this action to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

3. In addition, the Court has jurisdiction over Plaintiff's claims under the FLSA pursuant to 29 U.S.C. § 216(b).

4. Venue is proper in the Eastern District of Michigan pursuant to 28 U.S.C. § 1391, as a substantial part of the events or omissions giving rise to the claims in this action occurred within the Eastern District of Michigan.

## NATURE OF CLAIMS

5. Perfecting owns at least 90 commercial and residential properties within the City of Detroit, including a main church building and offices located at 7616 E. Nevada Avenue. Marvin L. Winans is the founder and president of Perfecting Church. Perfecting employs approximately 40 workers to clean and maintain its real estate holdings.

6. Plaintiff worked as a housekeeping employee for Perfecting. Perfecting manipulated Plaintiffs' time clock records in order to avoid paying her for overtime hours worked. Perfecting also implemented an unlawful time docking policy to penalize employees who arrived late. Perfecting deducted annual "kitchen dues" from plaintiffs' wages for use of a kitchen without her written permission. Perfecting ordered Plaintiff to kick back wages to supervisors in the form of cash gifts. Perfecting also leased one of its many residential properties to the Plaintiff. However, contrary to the FLSA, Perfecting profited from the relationship with the Plaintiff by charging more than the reasonable cost of housing to Perfecting. In January 2017 Winans met with the Plaintiff. Having knowledge of the Plaintiff's 2016 earnings, Winans demanded that the Plaintiff, as a member of Perfecting Church, tithe (donate 10% of her 2016 gross wages to Perfecting). When Plaintiff refused, Winans terminated her. Non-member employees of Perfecting were *not* required to tithe as a condition of employment.

7. Forcing only church member employees to give back 10 % of their earnings to Perfecting violates the FLSA, the WOWA, and ELCRA.

## PARTIES

8. Lakaiya Harris is a natural person who resides in Michigan.

*9.* Ms. Harris was an employee of the Defendants within the meaning of 29 U.S.C. § 203(e) and Mich. Comp. Laws § 408.412.

10. Perfecting is an ecclesiastical corporation formed under the laws of the State of Michigan.

11. Perfecting has been engaged in commerce as defined in 29 U.S.C. §§ 201 *et. seq.* during the relevant time period.

12. Defendant Perfecting is an "enterprise" as defined by the FLSA, 29 U.S.C. § 204(r)(1).

13. Upon information and belief, for each calendar year from January 1, 2015 and up to the present time, Perfecting's annual gross receipts or business done was not less than $500,000.

14. Upon information and belief, Perfecting is part of a larger enterprise controlled by Winans which includes the following corporations:

    a.    Perfecting Holdings;

    b.    Marvin L. Winans Academy of Performing Arts;

    c.    Perfecting Community Development Corporation;

    d.    Solid Rock Management;

    e.    MLW Productions, Inc.

(Collectively the "Perfecting Enterprise").

15. The entities comprising the Perfecting Enterprise provide mutual assistance to each other and share common ownership and control of Winans.

    a.    For example, in 2007 Perfecting Church "gifted" to Perfecting Holdings a property valued in excess of $2M to be used to house the Marvin L. Winans Academy of Performing Arts.

    b.    Employees on the payroll of Perfecting Church maintain properties owned by other corporations forming part of the Perfecting Enterprise.

    c.    Winans' operates his recording and production company, MLW Productions, Inc., out of his office at Perfecting Church.

16. Upon information and belief, for each calendar year from January 1, 2015 and up to the present time, the Perfecting Enterprise's annual gross volume of sales made or business done was not less than $500,000.

17. Perfecting has been an employer within the meaning of 29 U.S.C. § 203(d) and Mich. Comp. Laws § 408.412 during the three-year period preceding the filing of this complaint.

18. Marvin L. Winans is a natural person and a resident of the State of Michigan.

19. Marvin L. Winans has been the President of Perfecting during the three-year period preceding the filing of this complaint.

20. Marvin L. Winans has been the president of each entity forming part of the Perfecting Enterprise during the three-year period preceding the filing of this Complaint.

21. Upon information and belief, an employment relationship existed within the meaning of the FLSA and the WOWA, between Winans and the Plaintiff in that Winans had the power to control the Plaintiff.

22. Upon information and belief, Winans had the power to hire and fire the Plaintiff, and to control her work schedule, conditions of her employment, determine her rate and method of pay, and signed her payroll checks.

23. Upon information and belief, Winans has been an employer within the meaning of 29 U.S.C. § 203(d) and Mich. Comp. Laws § 408.412 during the three-year period preceding the filing of this Complaint.

## STATEMENT OF FACTS

24. Plaintiff Lakaiya Harris was employed by Perfecting from approximately March 2012 until January 2017.

25. Ms. Harris worked as housekeeper.

26. For the first several weeks of her employment, Plaintiff cleaned the Marvin L. Winans Academy of Performing Arts, an elementary and middle school headed by Winans.

27. During her employment with the Marvin L. Winans Academy of Performing Arts, the Plaintiff was paid by Perfecting Church.

28. After several weeks, the Plaintiff was transferred to Perfecting's main church and offices located at 7616 E. Nevada.

29. Plaintiff's regular rate of pay was $9 per hour throughout her employment with Perfecting. She was paid on a bi-weekly basis.

30. Plaintiff recorded her work hours using an electronic time clock. At times during her employment her hours worked far exceeded 40 hours per week. However, Perfecting manipulated the time clock records during many of these weeks and paid the Plaintiff only for the first 40 hours worked.

31. Plaintiff was subject to the following Tardiness Policy found in Perfecting's Employee Handbook:

*Tardiness is the failure to report for work at the time scheduled. Employees are expected to be at their workstation and prepared to work on time. Each time an employee is late he or she will be docked according to the following schedule:*

*1 - 15 minutes    -    15 minutes*

*16 - 30 minutes   -    30 minutes*

*31 - 45 minutes   -    45 minutes*

*46 - 60 minutes   -    1 hour*

32. In approximately April 2013 Perfecting Church and the Plaintiff entered into a rental agreement for 10505 Nottingham, Detroit, MI.

33. The plaintiffs' net income, after taxes and deductions, was approximately $1100 per month.

34. Under the terms of the lease between Plaintiff and Perfecting, Plaintiff agreed to pay $500 per month in rent to Perfecting.

35. Upon information and belief, the $500 rent far exceeded Perfecting's costs of furnishing the housing, and the arrangement resulted in a profit to Perfecting.

36. In addition to her rent to Perfecting, the Plaintiff was responsible for utilities, including gas, electric, water and alarm monitoring for 10505 Nottingham. These utilities could cost up to approximately $250 per month.

37. After paying for utilities and rent, Plaintiff was left with approximately $350 per month to pay for the cost of a cell phone, groceries, transportation, clothing, food and all other personal expenses.

38. Despite Perfecting's knowledge that the plaintiff had virtually no disposable income,

    a. Perfecting deducted between $40-$48 in kitchen dues from the Plaintiffs' paycheck each year.

8

  b. Perfecting requested that the Plaintiff tithe 10% of her gross earnings (approximately $140 per month) to Perfecting Church;

  c. Perfecting requested that the Plaintiff donate an additional "offering" to the Perfecting over and above the tithe;

  d. Perfecting repeatedly required the Plaintiff to kick-back between $10-25 in wages to Perfecting to "celebrate" the birthdays of supervisors and managers and other holidays.

  e. When Plaintiff fell behind in her rent because she was unable to meet her expenses, Perfecting charged her late fees.

  39. For example, the Plaintiff's supervisor was Brenda Lancaster. Brenda Lancaster's Birthday is March 29. In 2015 Cynthia Flowers-Williams (Cindy), the General Manager of Perfecting, distributed a memo in advance of Lancaster's birthday to all staff directing a "donation" of at least $10. When the Plaintiff did not "donate" the money as requested, Cindy issued a reminder note from the Employer stating, in part, that Perfecting "will be happy to payroll deduct your next payroll check (4/28/15) if need be." When the Plaintiff still didn't pay, Cindy approached her and asked, "You don't have ten dollars?" The Plaintiff responded that she did not. Cindy asked whether, if she donated $10 on the Plaintiff's behalf, the Plaintiff would "pay her back." The Plaintiff responded "sure." In order to not

be indebted to Cindy, the Plaintiff later gave $30 to her sister, Renee Flowers-Compton (Renee), who was now her assistant that collected the donations.

40. Again in 2016 Plaintiff refused to "donate" to Perfecting for Brenda Lancasters' birthday gift. This time, Cindy approached her and told her "Well, you're going to have to give this $10." When the Plaintiff responded that that she needed to pay for utilities and groceries and did not have the money, Cindy responded "I know you have $10 floating around in your little world, you just don't want to give it up. Everybody has to give this." When the Plaintiff continued to protest, Cindy responded "Well, if you don't get the $10 by the end of the week, it'll be more than $10 you don't have." The Plaintiff confided in a co-worker that she expected to be fired for refusing to give the $10. Upon information and belief, in order to help the Plaintiff keep her job, the co-worker "slipped" $10 onto Cindy's chair on the Plaintiff's behalf. However, the next day a Perfecting supervisor approached the Plaintiff, handed her the $10 bill, and told her that she must give the money directly to Renee. Plaintiff gave the money to Renee in order to keep her job.

41. At a staff meeting in 2016, Winans asked the staff why they appeared unhappy. Plaintiff openly stated in the meeting that she was not happy because she was not being paid for all of the work she was doing.

42. Plaintiff was a member of Perfecting Church.

43. Other employees of Perfecting were not members of Perfecting Church.

44. In October 2016 Winans directed the Plaintiff to meet with him in his office at 5:00 PM. At the meeting, Winans wanted to know why the Plaintiff had not attended church recently. Plaintiff told him that she was exhausted from working long hours and was not being paid. She also complained to Winans that her job was being threatened for refusing to "donate" towards gifts to supervisors.

45. January 2017, the Plaintiff was asked by Brenda Lancaster to attend a meeting with Lancaster and Winans in the conference room. During the meeting Winans said that it had come to his attention that Ms. Harris had earned $18,000 in 2016, "so you owe us $1,800.00". Ms. Harris brought to Winans' attention that her contribution statement (a statement furnished by Perfecting ostensibly showing the members' total yearly contributions), was dramatically less than what she actually gave, he responded "We're not talking about the offering right now." When she stated that she didn't have the money, he offered to deduct the $1,800.00 directly from her bi-weekly paychecks. The Plaintiff stated that she was not going to let Perfecting deduct $1,800.00 from her paycheck and again complained that her job had already been threatened for not giving "birthday money."

46. In response, Winans stated "Well, that pretty much terminates your employment with us.  You can go ahead and proceed with the exit interview with Brenda Lancaster."

47. After the meeting Lancaster asked the Plaintiff "Why didn't you just let him take it from your check?"

48. Plaintiff was terminated the same day.

49. The requirement to tithe was imposed upon the Plaintiff because she was a member of Perfecting.

50. Upon information and belief, non-member employees of Perfecting were not terminated for refusing to tithe.

## COUNT I

Violation of the Minimum Wage Provisions of the FLSA

51. Plaintiff hereby repeats and reallege all preceding paragraphs as though fully set forth herein.

52. The minimum wage provision of the FLSA, 29 U.S.C. § 206, requires employers to pay employees at least the federal minimum wage for all time worked.

53. Defendant Perfecting is a covered employer and therefore its employees are entitled to the protections of the FLSA including the minimum wage provision.

54. The Payments made by Plaintiff to Perfecting and its agents for housing, and kitchen dues and cash gifts caused the Plaintiff's wages to below the minimum wages required by the FLSA.

55. The lateness docking policy resulted in the failure to pay plaintiff the minimum wage for all hours worked.

56. Defendants' violations of the minimum wage provisions of the FLSA were willful.

## COUNT II

Violation of the Overtime Provision of the FLSA

57. Plaintiff hereby repeats and realleges all preceding paragraphs as though fully set forth herein.

58. The overtime wage provision of the FLSA, 29 U.S.C. § 207, requires employers to pay employees for all overtime hours worked at 1 ½ times the employee's regular rate of pay.

59. Defendant Perfecting is a covered employer and therefore its employees are entitled to the protections of the FLSA including the overtime wage provision.

60. Perfecting violated the overtime provision of the FLSA by charging the Plaintiff for housing in excess of the reasonable cost to Perfecting, deducting

"kitchen dues" from her paycheck, and requiring the Plaintiff to pay cash gifts to her supervisors during weeks in which she worked overtime hours.

61. Defendants violated the overtime provisions of the FLSA by failing to compensate the Plaintiff for all overtime hours worked through:

    a. Manipulation of time clock records; and

    b. An unlawful lateness docking policy.

62. Defendants' violations of the overtime provisions of the FLSA were willful.

## COUNT III

Violation of the Minimum Wage Provision of the WOWA

63. Plaintiff hereby repeats and realleges all preceding paragraphs as though fully set forth herein.

64. The Payments made by Plaintiff to Perfecting and its agents for housing, and kitchen dues and cash gifts caused the Plaintiff's wages to below the minimum wages required by the WOWA, MCL § 408.414.

65. Defendants' minimum wage violations of the WOWA were willful.

## COUNT IV

Violation of the Overtime Provisions of the WOWA

66. Plaintiff hereby repeats and realleges all preceding paragraphs as though fully set forth herein.

67. The WOWA requires that "an employee shall receive compensation at not less than 1-1/2 times the regular rate at which the employee is employed for employment in a workweek in excess of 40 hours." MCL § 408.414a.

68. Perfecting violated the overtime provision of the WOWA by charging the Plaintiff for housing in excess of the reasonable cost to Perfecting, deducting "kitchen dues" from her paycheck, and requiring the Plaintiff to pay cash gifts to her supervisors during weeks in which she worked overtime hours.

69. Defendants violated the overtime provisions of the WOWA by failing to compensate the Plaintiff for all overtime hours worked through:

    a. Manipulation of time clock records; and

    b. An unlawful lateness docking policy.

70. Defendants' violations of the overtime provisions of the WOWA were willful.

## COUNT V

### Discrimination in Violation of 29 U.S.C. § 215

71. Plaintiff hereby repeats and realleges all preceding paragraphs as though fully set forth herein.

72. Section 215 of the FLSA makes it unlawful for an employer "to discharge or in any other manner discriminate against any employee" who has engaged in certain protected activity.

73. Plaintiffs complaints to Winans about failing to pay her for all hours worked, requiring her to "donate" cash to Perfecting as gifts to supervisors, and Flowers-Williams threat to fire her if she did not donate the cash, constituted protected activity under the FLSA.

74. Plaintiff's refusal to allow Winans and Perfecting to deduct $1,800 from her paychecks constituted protected activity.

75. Plaintiff was terminated.

76. There is a causal connection between the Plaintiff's protected activity and her termination.

## COUNT VI

77. Plaintiff hereby repeats and realleges all preceding paragraphs as though fully set forth herein.

78. Winans was an "employer" under section 201 the Michigan Elliott Larsen Civil Rights Act ("ELCRA"), MCL § 37.2801.

79. Section 202 of ELCRA, makes it unlawful for an employer to "discharge, or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of religion…"  MCL § 37.2202.

80. Defendants discriminated against Plaintiff because of her membership in Perfecting by requiring her to tithe.

81. Defendants terminated the Plaintiff for refusing to tithe as a member of Perfecting Church.

82. Non-member employees of Perfecting were not required to tithe.

83. Defendants actions of requiring only member-employees to tithe, and of terminating the Plaintiff for refusing to tithe constitute an ELCRA violation.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, respectfully requests that the Court grant the following relief:

(a) Unpaid minimum wages under the FLSA;

(b) Unpaid overtime wages under the FLSA;

(c) Unpaid minimum wages under the WOWA;

(d) Unpaid overtime wages under the WOWA;

(e)     Liquidated damages in an amount equal to unpaid minimum wages and overtime under the FLSA;

(f)     Liquidated damages in an amount equal to unpaid minimum wages and overtime under the WOWA;

(g)     For violations of 29 USC § 215, lost wages, liquidated damages in an amount equal to lost wages, and punitive damages;

(h)     For ELCRA violations, back pay and front pay, punitive damages, and damages for emotional distress;

(i)     Prejudgment interest to the extent permitted by applicable law;

(j)     For all violations, reasonable attorneys' fees and costs to Plaintiffs' counsel;

(k)     Such other and further relief as the Court deems just and appropriate.

## JURY DEMAND

Plaintiff requests a trial by jury.

Dated:     September 5, 2018

/s/
Steven John Moser
MOSER LAW FIRM, P.C.
3 School Street
Suite 207B
Glen Cove, New York  11542
Phone: (516) 671-1150
Fax: (516) 882-5420
smoser@moseremploymentlaw.com